JAMES L. YOWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES L. YOWELL AND JEAN C. YOWELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yowell v. Commissioner
Docket Nos. 14830-80, 14965-80.
United States Tax Court
T.C. Memo 1985-584; 1985 Tax Ct. Memo LEXIS 46; 51 T.C.M. (CCH) 13; T.C.M. (RIA) 85584; December 2, 1985. Paul E. Groff, for the petitioners. Elaine T. Fuller, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies with respect to the petitioners in these consolidated cases, [1] as follows: Deficiencies
Addition to Tax
Docket No.
Taxable Year
Income Tax
Sec. 6653(a) [2]
14965-80
1973
$1,537
14830-80
1975
19,723
$986
1976
22,329
1,116
After concessions by the parties, the issues for decision are: (1) Whether James L. Yowell (petitioner) utilized various =automobiles for business purposes so as to be entitled to depreciation and investment tax credits; (2) whether petitioner is entitled to a capital loss from the sale of certain of his automobiles; and (3) whether petitioner is liable for an addition to *47 tax pursuant to section 6653(a) for the taxable year 1976. Petitioner and his wife, Jean C. Yowell, resided in Long Beach, California, during August 1980, the month when both petitions were filed. Petitioners filed a joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center at Fresno, California. Petitioner (James Yowell) individually filed Federal income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service Center at Fresno, California. During the taxable years 1975 and 1976, petitioner was an outside salesman employed by the House of Packaging, Inc. (House), and the House of Plastic Packaging, Inc. During 1975 and 1976, House manufactured folding cartons and plastic packaging parts used in *48 the automotive industry "after market." The "after market" refers to the type of automotive accessories which are purchased subsequent to the initial purchase of the car. The after market is considered to involve two distinct subparts: one dealing with "hard" parts such as replacement brakes, fuel pumps, carburetors, etc., and the other dealing with the cosmetic side, including such items as chrome-plated valve covers. During the years 1975 and 1976, petitioner was the only House salesman involved in selling packaging to the automotive after market. Sales of automotive after market packaging increased from approximately 5 percent of House's total sales to approximately 50 to 70 percent during the taxable years 1975 and 1976. Petitioner, as an outside salesman, generally visited the office of his employer only once or twice a week. On the other mornings, he would proceed directly to his customers. Petitioner's employer agreed to pay the expenses of operating two automobiles in exchange for petitioner's agreement to purchase automobiles and improve them to promote the image of House of Packaging. Petitioner regularly purchased, fixed up and sold automobiles. During the years *49 in question, petitioner generally owned or leased a combination of four vehicles. Petitioner had a personal interest in the modification of automobiles and he is a high-performance and show car enthusiast. He used this personal interest in modified cars to promote himself as a personality in the automobile after market. Petitioner's interest in modified cars was, in part, the reason for his success as a salesman and the increase in the House of Packaging's sales in the automobile after market. Additionally, petitioner permitted several customers to use his modified automobiles in order to promote their products at shows or for other advertising purposes. Petitioner did not charge charge customers for the use of his modified automobiles. On his 1976 tax return, the petitioner claimed the following depreciation deductions: (a) 1972
Lincolon Continental Mark IV
$1,833
(b) 1970
Chevrolet Corvette
1,333
(c) 1977
Lincoln Continental Mark V
276
Additional first year depreciation
2,000
(d) 1977
Excalibur
591
Total
6,033
Reimbursement
[3] 4,200
Deduction/Return
1,833
Petitioner owned the following cars during 1976: 1970
Lincoln Limousine
Entire Year
1972
Mark IV
Sold Nov. 1, 1976
1970
Corvette
Sold Sept. 1, 1976
1977
Mark V
Purchased Dec. 9, 1976
1977
Excalibur
Purchased Nov. 25, 1976
*50 Petitioner claimed investment credits with regard to the 1977 Lincoln Continental Mark V (Mark V) and the Excalibur. The excalibur was leased by petitioner and petitioner elected to treat the lease as an installment sale rather than a lease for purposes of his 1976 income tax return. On brief, however, petitioner concedes that he is not entitled to capitalize the lease as claimed in the return and, accordingly, is not entitled to depreciation or investment credit with respect to the Excalibur. Petitioner, however, does claim that the lease payments would be deductible as ordinary and necessary expenses in connection with his business activity. Unfortunately, there is no evidence in the record indicating the amount of lease payments or reflecting the terms of the lease. Accordingly, petitioner has failed to carry his burden of proving the lease payments with respect to the Excalibur. ; ; Rule 142(a).[4]
*51 Petitioner's original cost basis in the Mark V was $15,383. Petitioner had claimed that the Excalibur and the Mark V were used 100 percent for business. Respondent determined petitioner's business use was only 10 percent of the total use of those automobiles. Accordingly, respondent disallowed all but 10 percent of the investment credit claimed with respect to the Mark V and the entire amount of claimed investment credit concerning the Excalibur. Petitioner purchased the Lincoln Continental Mark IV (Mark IV) on July 1, 1972, for $12,000 and sold it in November 1976 for $3,600. Respondent also determined that the Mark IV had been used only 10 percent for business purposes, further determining that no loss was allowable upon its sale and that, in fact, petitioner had a gain of $340 on the sale of the Mark IV. The parties stipulated that the petitioner incurred $5,510.08 in expenses in improving petitioner's Corvette during 1971. Petitioner, although unable to substantiate by means of documents, testified that he had purchased the Corvette for $5,800 and spent approximately $14,000 to improve it (which would include the $5,510.08 to which the parties agreed).Petitioner sold the *52 Corvette during the taxable year 1976 for $3,600. Although petitioner testified that he had spent amounts in addition to the $5,510.08 to improve the Corvette, he could not recall any specifics concerning the improvements and no attempt was made by petitioner to seek the corroborating testimony or documents of third parties who had performed work, if any, upon petitioner's Corvette. Accordingly, in view of the record in this case, we find that the petitioner has only shown entitlement to basis composed of a $5,800 purchase price, plus improvements of $5,510.08 agreed to by the parties. ; Rule 142. Petitioner, as an "outside salesman," is entitled to claim deductions from gross income for expenses incurred in his business activities. Secs. 62(2)(D) and 161. In this case petitioner is seeking only the depreciation, based upon 100-percent use of four automobiles, because expenses of operation and maintenance had been paid by petitioner's employer.Of the depreciation claimed on four automobiles, respondent denied one (the Corvette) for lack of any business use and a second (the Excalibur) because it was leased and petitioner had not *53 shown that the useful life in petitioner's hands exceeded the remaining term of the lease. Depreciation on the remaining two automobiles was permitted by respondent in the amount of 10 percent, based upon petitioner's usage. Respondent limited the allowance to 10 percent based upon the determination that petitioner drove from his residence to customers most of the time. There is no question that travel from one's residence to one's place of business is commuting and not deductible. . Transportation between jobs, job locations or businesses, however, is deductible. . Respondent has incorrectly assumed that petitioner traveled from his residence to a single client and then returned to his residence most days (90 percent of the time). Although petitioner's evidence is far from complete, we find that he used his Mark IV and Mark V automobiles 50 percent for business during the taxable year 1976. . Concerning petitioner's Corvette, we have found that he purchased it for $5,800 and made *54 $5,510.08 of improvements during 1971. We further find that it was used 50 percent for business purposes and sold September 1, 1976, for $3,600. Concerning petitioner's Mark IV, we find that petitioner's basis is limited to the $12,000 cost, for failure to carry his burden of proving any additional basis. ;; Rule 142(a). Petitioner sold the Mark IV for $3,600 on November 1, 1976. Respondent asserted an addition to tax under section 6653(a) for negligence or an intentional disregard of the rules and regulations. On brief, respondent conceded the addition to tax for 1975. Petitioner bears the burden of proving that the addition to tax is not applicable. . Petitioner has failed to carry this burden. Indeed, the record is replete with instances where petitioner has failed to keep or provide adequate records to substantiate the deductions claimed on his 1976 return. We find that respondent correctly determined that petitioner is liable for an addition to tax under *55 section 6653(a) for 1976. To reflect the foregoing, Decisions will be entered pursuant to Rule 155.
Footnotes
1. Docket No. 14965-80 involves a claimed investment credit carryback which is wholly dependent upon the outcome of docket No. 14830-80. Accordingly, petitioner Jean C. Yowell is a party to this case solely because she filed a joint return with James L. Yowell for the 1973 taxable year. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue.↩
3. In addition to operating expenses, petitioner during 1976 received $4,200 from House for the improvement of his automobiles.↩
4. All references to rules are to the Tax Court's Rules of Practice and Procedure.↩